UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CREIGHTON B. GOODWIN,

          Plaintiff,

   v.

TARGET CORPORATION,

          Defendant.

CASE NO. C09-5519BHS

ORDER GRANTING
TARGET'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on Defendant Target Corporation's ("Target")
motion for summary judgment (Dkt. 1). The Court has considered the pleadings filed in
support of and in opposition to the motion and the remainder of the file and hereby grants
the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On August 27, 2009, Plaintiff Creighton B. Goodwin ("Goodwin") filed an
Employment Discrimination Complaint against Target alleging discrimination and
harassment based on race. Dkt. 7. On August 23, 2010, Goodwin filed an amended
complaint (Dkt. 14) alleging discrimination and harassment based on race, age, sex, and
religious belief. *Id.* ¶ 8.

On August 4, 2011, Target filed a motion for summary judgment. Dkt. 86. On
August 9, 2011, Goodwin filed a declaration in support of motion for summary judgment
against Target. Dkt. 90. On August 22, 2011, Goodwin responded. Dkt. 91. On August
26, 2011, Target replied. Dkt. 92.

## II. FACTUAL BACKGROUND

On March 6, 2007, Target hired Goodwin as a "Building Services Store Specials" ("SBS") in its Lakewood, Washington store.  Dkt. 88, Declaration of Kris Moes ("Moes Decl."), ¶ 8.  Goodwin's title later changed to Store Facilities Technician ("SFT").  *Id.* Goodwin's duties as an SFT are described in a written job description, but as a general matter he was responsible for store maintenance.  *Id.*, Exh. E.  Goodwin typically received assignments for preventive maintenance through email from the District Facilities Manager ("DFM"), and he received other work orders that were identified by store employees and communicated to Goodwin through a form called a "blue card." Dkt. 87, Declaration of Michael Griffin ("Griffin Decl."), Exh. 1, Deposition of Creighton Goodwin ("Goodwin Dep.") at 50:25-52:15.

On August 27, 2007, Goodwin sent an email to his supervisor at that time, Jennifer Langdon, requesting an immediate and indefinite leave of absence from work.  Moes Decl., Exh. F.  Goodwin stated that he required the leave due to "severe personal circumstances" and undisclosed health issues.  Griffin Decl., Exh. 2.  Langdon notified both the store manager, Colleen Brossart, and the store human resources manager, Kelishea Boschulte.  *Id.*  Goodwin briefly returned to work on September 10, 2007, and allegedly worked several hours, but applying its uniform policy regarding leaves of absence, Target required that Goodwin remain on leave until he provided medical documentation supporting his need for the prior leave.  Moes Decl., ¶ 11.

On September 28, 2007, Goodwin provided documentation excusing him from August 27 through September 10.  Griffin Decl., Exh. 4.  Target claims that Goodwin's absence from September 11 to September 27 was unexcused.  Dkt. 86 at 6.  Goodwin provided a doctor's note on September 28, Target permitted him to return to work, and he was not disciplined in any way for his unapproved absence.  Goodwin Dep., 35:10-36:8.

In October 2007, Target claims that Goodwin failed to properly repair a broken door or take any safety precautions to ensure that customers or other employees were aware of the potential hazard. Dkt. 86 at 7. Target claims that Goodwin did not alert his supervisor, the store manager, or anyone about his failure to fix the door. *Id.* The door, or a piece of it, collapsed. Goodwin admits that he received verbal counseling for his failure to act. Goodwin Dep., 34:13-48:3.

On December 31, 2007, the District Building Services Team Lead, Tim Tucker, emailed a Fourth Quarter Recovery Plan ("Recovery Plan") to Goodwin along with all other SFT's in Mr. Tucker's district. Griffin Decl., Exh. 5. Although Goodwin claims this was the first time he saw the action plan, he admits that the Recovery Plan was discussed at the weekly and monthly SFT meetings conducted by the DFM in October, November, and December 2007. Goodwin Dep., 215:15-218:19. The goal was to complete the plan by January 31. Griffin Decl., Exh. 5.

Target claims that, towards the end of January 2008, Ms. Brossart called Mr. Tucker stating that she was concerned because Goodwin had not completed many of the tasks/projects on the Recovery Plan. Dkt. 86 at 7-8. Mr. Tucker met with Goodwin to discuss a time line for the incomplete tasks/projects. Goodwin received an extension of the time to complete his assigned tasks and failed to meet his new deadline. Griffin Decl., Exh. 6.

On February 21, 2008, Mr. Tucker issued a corrective action to Goodwin. *Id.* Goodwin objected that the portion of the corrective action regarding his level of service ("LOS") scores was incorrect. Goodwin's corrective action was revised to remove the LOS scores. *Id.*, Exh. 7.

On February 29, 2008, Mr. Tucker met with Goodwin to administer the revised corrective action. The district human resources representative, Sarah Butler, accompanied Mr. Tucker at the meeting. The counseling outlined for Goodwin the areas

where his performance had not met expectations: (1) failing to meet the Recovery Plan on time; (2) failing to provide Tucker with a revised schedule by which Goodwin would complete the tasks; and (3) his general lack of accountability and his defensiveness when given feedback. *Id.*

During the February 29, 2008 meeting, Goodwin made a passing remark about God. Goodwin testified that he said something like "praise the Lord." Goodwin Dep., 73:22-76:8. Ms. Butler and Mr. Tucker allege that they heard him say words to the effect "forgive me Lord for what I am going to have to do." Moes Decl., Exh. G. A follow-up meeting between Goodwin, Ms. Butler, and Craig Releford, a store security employee, was held to discuss the comment. Moes Decl. ¶ 14 & Exh. G. Goodwin denied Ms. Butler's and Mr. Tucker's version of his statement, and the matter was dropped. *Id.*

At 9:47 a.m. on March 3, 2008, Goodwin emailed Mr. Tucker, Ms. Butler, Drew Grahek, and Ms. Brossart complaining about the February 29 meeting. Moes Decl., Exh. G. Also on March 3, 2008, Goodwin called Target's Employee Relations and Integrity Hotline to complain. *Id.* ¶ 16. Target initiated an investigation of Goodwin's concerns that was led by Senior Human Resources Representative ("HRR") Kris Moes. *Id.* Ms. Moes is based at company headquarters in Minneapolis and had no previous involvement with Goodwin or the store managers involved. As part of her investigation, Ms. Moes interviewed Goodwin, Ms. Butler, Mr. Tucker, and Mr. Grahek. *Id.*

Ms. Moes scheduled a telephone interview with Goodwin for March 7, 2008. At 10:22 a.m. the day before the scheduled call, Goodwin emailed Ms. Moes and provided information about a customer who slipped and fell in the store the previous day. *Id.*, ¶ 17 & Exh. I. Goodwin speculated that two employees were suspicious of the customer. Goodwin Dep. 105:23-106:17. Goodwin suggested to Ms. Moes that the two female employees were implying that the customer who fell was feigning injury and had

1    "criminal intent" to defraud Target.  Moes Decl., Exh. I.  Goodwin also stated that the

2    employees were suspicious because the customer was African-American.  *Id.*

3        In late March or early April, Goodwin was given his annual performance review

4    for fiscal year 2007 (February 4, 2007 to February 2, 2008).  Moes Decl. Exh. J.

5    Goodwin was rated a medium to low-medium performer.  *Id.*

6        In March and April 2008, Goodwin mishandled the return of three broken store

7    scanners, had multiple attendance infractions regarding meal and rest break compliance,

8    and continued failing to communicate effectively or take responsibility.  *Id.*, Exhs. K-M.

9    On May 23, 2008, Emil Yanos, the new DFM and Ms. Boschulte administered a Written

10   Warning for unsatisfactory work performance.  *Id.*  The same day, Goodwin filed his

11   Charge of Discrimination with the Equal Employment Opportunity Commission.  Griffen

12   Decl., Exh. 9.

13       On May 27, 2008, Goodwin voluntarily resigned.  Goodwin Dep. 16:16-17-7.

14   Despite Goodwin's view that he voluntarily resigned as of May 27, Target provided him

15   with leave of absence paperwork and treated his leave as protected FMLA leave until

16   August 27, 2008.  Moes Decl. ¶ 22 & Exhs. N-Q.  Even though Goodwin's protected

17   leave ended on August 27, Target continued to hold Goodwin's job open and to

18   communicate with him about returning to work.  *Id.*  On November 24, 2008, Target

19   coded Goodwin's termination as a voluntary resignation.  *Id.*, Exh. Q.

### III. DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party

fails to make a sufficient showing on an essential element of a claim in the case on which

the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt").

*See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if

there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The

Court must consider the substantive evidentiary burden that the nonmoving party must

meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

issues of controversy in favor of the nonmoving party only when the facts specifically

attested by that party contradict facts specifically attested by the moving party.  The

nonmoving party may not merely state that it will discredit the moving party's evidence at

trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec.*

*Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255).  Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be

presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    Defendant's Motion**

Defendant moves for summary judgment on Goodwin's claims under Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* and his claim under

California Government Code 12940.  Dkt. 86 at 2.

### 1.    California Government Code 12940

Goodwin alleges that Target is liable under "Government Code 12940." Dkt. 14, ¶ 51. Target assumes that Goodwin is asserting a claim under California Government Code 12940, which is California's law against discrimination in the workplace. *See* Cal. Gov. Code § 12940. Goodwin does not allege that he ever worked for Target in California, and he fails to identify any allegations that would otherwise support a cause of action under California state law. Therefore, the Court grants Target's motion for summary judgment on Goodwin's Government Code 12940 claim.

### 2.    Title VII

Under Title VII of the Civil Rights Act of 1964, it is unlawful "for an employer– (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1).

In order to prevail on a Title VII claim of discrimination, a plaintiff must first establish a prima facie case of discrimination consisting of the following elements: (1) plaintiff belongs to a protected class; (2) he was performing his job according to the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other employees with qualifications similar to his own were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Vasquez v. County of Los Angeles*, 307 F.3d 884, n. 5 (9th Cir. 2002). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment decisions. *McDonnell Douglas*, 411 U.S. at 802. Once the defendant satisfies this burden, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for a discriminatory motive. *Id.* at 804.

1

### a.    Race, Religion, & Sex

2

In this case, Goodwin claims that he was discriminated against based on his sex,

3 race, and religion.  First, Goodwin has submitted no evidence that his sex was a factor for

4 any of the adverse employment actions.  Without any factual allegations in support of his

5 claims of adverse employment actions because of his sex, Goodwin fails to establish even

6 a prima facie case of sex discrimination under Title VII.

7

8 Second, Goodwin has submitted no evidence that he was discriminated against

9 because of his race.  Target states that Goodwin's speculative evidence consists of a co-

10 worker being rude to Goodwin once and "two unidentified female employees were

11 insensitive to a fallen customer who happened to be African-American."  Dkt. 92 at 11.

12 This evidence does not establish a prima facie case of racial discrimination.

13 Third, Goodwin has submitted no evidence that he was discriminated against

14 because of his religion.  Goodwin appears to base his claim on a single comment that he

15 made during the February 29, 2008 meeting regarding his revised corrective action.

16 Goodwin's speculation that Target's knowledge that Goodwin believed in an unidentified

17 "God" or "Lord" is not admissible evidence that Goodwin was discriminated against.

18 Even if Goodwin could establish a prima facie case based on admissible evidence,

19 Target has put forth legitimate, non-discriminatory reasons for its actions which consisted

20 of nothing more than engaging Goodwin in corrective counseling for poor work

21 performance.  Target has shown that Goodwin had unexcused absences, failed to comply

22 with attendance policies, failed to complete assigned tasks, failed to comply with meal

23 and rest break policies, failed to report a broken door to a supervisor, and exhibited

24 defensiveness when counseling sessions occurred in connection with his deficiencies.

25 Moreover, Target held Goodwin's position open for him months after Goodwin

26 voluntarily quit.  Target's legitimate reasons are supported by admissible evidence and

27

28

1   the Court finds that Target has met its burden on this issue.  Therefore, the Court grants

2   Target's motion for summary judgment on Goodwin's Title VII claims.

3            **b.    Constructive Discharge**

4          The constructive discharge "inquiry is objective: Did working conditions become

5   so intolerable that a reasonable person in the employee's position would have felt

6   compelled to resign?"  *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004).  The Ninth

7   Circuit has held that

8            constructive discharge occurs when the working conditions deteriorate, as a
         result of discrimination, to the point that they become sufficiently
9            extraordinary and egregious to overcome the normal motivation of a
         competent, diligent, and reasonable employee to remain on the job to earn a
10           livelihood and to serve his or her employer.

11  *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007); *see also Tidwell v. Meyer's*

12  *Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996) ("An employee who quits without giving

13  his employer a reasonable chance to work out a problem has not been constructively

14  discharged.").

15         In this case, Goodwin has failed to submit evidence that he was constructively

16  discharged.  There is no evidence that his working conditions were "extraordinary and

17  egregious."  Moreover, Goodwin voluntarily quit without giving Target a reasonable

18  chance to cure any problem that Goodwin believed compelled him to resign.  Therefore,

19  the Court grants Target's motion for summary judgment on Goodwin's claim for

20  constructive discharge.

21       **3.    Failure to Accommodate**

22          Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–65,

23  provides employees with a cause of action for an employer's failure to accommodate a

24  disabled employee.  Although Goodwin fails to explicitly allege a cause of action under

25  the ADA, Goodwin uses the phrase "failure to accommodate" throughout his pleadings.

26  *See, e.g.*, Dkt. 91.  Goodwin has failed to allege that he is disabled under the ADA and

ORDER - 9

1   has failed to allege that he requested Target to accommodate any disability that he may

2   have had.  Therefore, Goodwin's claim for "failure to accommodate" is dismissed.

3   **C.      In Forma Pauperis**

4          The Court may revoke in forma pauperis status if an appeal is frivolous or

5   meritless.  *Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002).   In this

6   case, the Court finds that an appeal of this matter would be meritless.  Therefore, the

7   Court revokes Goodwin's in forma pauperis status.

8                                **IV.  ORDER**

9          Therefore, it is hereby **ORDERED** that Target's motion for summary judgment

10  (Dkt. 86) is **GRANTED**.  Goodwin's in forma pauperis status is **REVOKED**.  The Clerk

11  is directed to enter judgment for Target.

12         DATED this 29th day of September, 2011.

13

14

15

16                                BENJAMIN H. SETTLE
                                 United States District Judge
17

18

19

20

21

22

23

24

25

26

27

28

ORDER - 10